## S02A1330. THE STATE v. JOHNSON.
### (576 SE2d 831)

BENHAM, Justice.

David Russell Johnson has been indicted for the murders of Luther Harper and Melissa Booth, for possession of a firearm during the commission of a crime, and for possession of a firearm by a convicted felon. The State has filed written notice of its intent to seek the death penalty against him. Following the trial court's issuance of several pre-trial rulings, this Court granted the State's application for interim review and directed the parties to address whether the trial court erred in ordering the results of the State's mental health expert's examination of Johnson sealed until the conclusion of the guilt/innocence phase of Johnson's trial. For the reasons set forth below, we affirm the trial court's order.

1. Johnson announced in the trial court that he did not intend to introduce any testimony by a mental health expert in the guilt/innocence phase of his trial but that he might do so in the sentencing phase. The State sought an order from the trial court requiring Johnson to submit to an evaluation by a mental health expert chosen by the State so that it would be prepared to offer its own expert testimony in rebuttal. See *Jenkins v. State*, 265 Ga. 539 (3) (458 SE2d 477) (1995) (a defendant may be prohibited from presenting expert mental health testimony as mitigation evidence in the sentencing phase of a death penalty trial unless the defendant submits to a court-ordered examination by a mental health expert whose report would be made available to the prosecution). Johnson acknowledged he was required to cooperate in the court-ordered evaluation by a mental health expert selected by the State and asked the trial court to place the report of the State's mental health expert under seal and to forbid the State from communicating with that expert until the conclusion of the guilt/innocence phase. Noting that Johnson did not plan to raise a mental health defense during the guilt/innocence phase of his trial, the trial court ruled that the results of the court-ordered mental evaluation were to be sealed, unavailable to the State

or the defendant, until "when and if the case reaches the penalty phase." If Johnson decided to present a mental health defense during the guilt/innocence phase, the court stated it would hold a hearing and unseal the results of the court-ordered evaluation for use during that phase of the trial. The decision to seal the results of the court-ordered evaluation until the penalty phase, should the trial proceed that far, is the subject of this appeal.

2. In formulating the rule that a defendant in a case in which the State is seeking the death penalty must either cooperate in an evaluation by a mental health expert whose report will be given to the State or forfeit the right to present expert mental health testimony at trial, we have balanced the truth-seeking function of the courts, the defendant's constitutionally-protected privilege against self-incrimination, and the State's interest in having the ability to respond to the defendant's expert mental health testimony with expert testimony. *Nance v. State*, 272 Ga. 217 (2) (526 SE2d 560) (2000). Under the rule, the defendant's privilege against self-incrimination is involved because the rule requires the defendant who wishes to present expert mental health evidence, in effect, to waive his right against self-incrimination and cooperate with an expert whose report will be given to the State to use against the defendant. Requiring the defendant's cooperation with the State's agent/expert is justified because the State is then able to respond to the defendant's expert mental health testimony, and the presentation of fraudulent mental health defenses is precluded. *Lynd v. State*, 262 Ga. 58 (11) (414 SE2d 5) (1992).

We have taken pains to ensure that the extent to which a defendant must waive his constitutionally-protected right to remain silent is no greater than is necessary to serve the purpose mandating the waiver: "to permit the State to formulate a response or a rebuttal to the testimony of the defendant's mental health expert." *Nance v. State*, supra, 272 Ga. at 219-220. In an effort to minimize the impact of the defendant's waiver of his constitutional right, we have limited the use to which the State may put the results of the court-ordered evaluation. We have stressed that the results are to be used by the State to respond to the expert mental health testimony presented by the defendant, and that it is error to use in the guilt/innocence phase information gathered by the mental health expert during court-ordered evaluation for the sentencing phase. Id. See also *Abernathy v. State*, 265 Ga. 754 (3) (462 SE2d 615) (1995) (the State may offer expert mental health testimony "strictly in rebuttal of the expert mental health evidence offered in mitigation by the defense"; since court-ordered mental health evaluation is necessary for the State to prepare its evidence to rebut the testimony of the defendant's mental health expert, no court-ordered evaluation is necessary if the defend-

ant states he will not offer mental health evidence through expert testimony; a trial court order on the use of court-ordered mental health evaluation is deficient if it does not limit the use of the evaluation to the rebuttal of the defendant's expert, as opposed to lay, testimony).

In *Nance*, supra, 272 Ga. at 220, we also recognized the importance of the court's truth-seeking function when we stated that the testimony of the mental health expert who conducted the court-ordered evaluation could be used to rebut the defendant's testimony as well as that of the defendant's mental health expert. Such usage reinforces one of the concepts that brought about the rule — "the need to prevent fraudulent mental defenses." *Lynd v. State*, supra, 262 Ga. at 64. Consequently, once a death-penalty defendant who has been convicted in the guilt/innocence phase confirms he will call a mental health expert during the sentencing phase of the trial, the defendant has finalized his waiver of the right to remain silent, and the State may use the court-ordered mental health expert's testimony to rebut the sentencing phase mental health testimony of the defendant's expert and the defendant.

3. In the case at bar, the trial court ordered the results of the court-ordered mental health evaluation of Johnson to be sealed until the conclusion of the guilt/innocence phase in an appropriate effort to enforce this Court's mandate of limits on the uses to be made of the defendant's statements to the State's mental health expert. Our mandate and the trial court's enforcement thereof are consistent with efforts made by courts in a number of other jurisdictions to limit the use of information gathered by the prosecution's mental health expert in anticipation of the defendant's announced intent to present expert mental health testimony in the sentencing phase of the trial. See *Commonwealth v. Sartin*, 751 A2d 1140, 1143-1144 (Pa. 2000) (results of State's mental health expert's examination of defendant sealed until guilt/innocence phase concluded and defendant announces he will call his expert in the sentencing phase); *State v. Reid*, 981 SW2d 166, 173 (Tn. 1998) (results of State's mental health expert's examination of defendant sealed from prosecutors until the conclusion of the guilt/innocence phase and defendant confirms his intent to call his expert in the sentencing phase); *Lagrone v. State*, 942 SW2d 602, 610-613 (Tex. Cr. App. 1997) (report of evaluation by State's expert sealed until defendant's expert testifies). Several federal district courts also have ordered the results of the government's mental health examination of the defendant sealed until the completion of the guilt/innocence phase and the defendant's announcement that his expert will be called in the sentencing phase. See *United States v. Minerd*, 197 FSupp. 2d 272 (W.D. Pa. 2002); *United States v. Edelin*, 134 FSupp. 2d 45, 55-56 (D.D.C. 2001); *United States v. Beck-*

*ford,* 962 FSupp. 748, 761 (E.D. Va. 1997); *United States v. Haworth,* 942 FSupp. 1406, 1408-1409 (D.N.M. 1996); *United States v. Vest,* 905 FSupp. 651, 654 (W.D. Mo. 1995). See also *United States v. Allen,* 247 F3d 741, 773-774 (8th Cir. 2001), where the court declined to find a per se constitutional basis for sealing the report of the government's mental health expert. Accordingly, we endorse the trial court's decision to seal the report of the examination of Johnson by the State's expert until the conclusion of the guilt/innocence phase of Johnson's trial and an announcement by the defendant that he intends to present expert mental health testimony during the sentencing phase, thereby confirming that he has waived his right to have the report of the court-ordered mental health examination kept under seal.

The State argues that the trial court's sealing of the results of its mental health expert's examination until the conclusion of the guilt/innocence phase unfairly constrains the State in preparing for the sentencing phase. However, because there is nothing in the record before this Court to demonstrate the likelihood of unfair prejudice to the State stemming from the trial court's order sealing the results of the State's expert's examination, we find no error in this case.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 13, 2003.

*Robert W. Lavender, District Attorney, Thurbert E. Baker, Attorney General, Paige R. Whitaker, Assistant Attorney General,* for appellant.

*Garrett & Gilliard, Michael C. Garrett, Michael M. White, Michael M. Mears, Holly L. Geerdes,* for appellee.